IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH WILSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| COLLEGE OF LAKE COUNTY | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Now comes Plaintiff, KEITH WILSON (hereinafter, "Plaintiff"), by and through his attorneys, Richard J. Gonzalez and Jaz Park of The Law Offices of Chicago-Kent College of Law, and for his Complaint against Defendant, COLLEGE OF LAKE COUNTY, (hereinafter, "Defendant"), states as follows:

### Nature of Action, Jurisdiction and Venue

1. This is an action for damages and equitable relief to redress the deprivation of rights secured to Plaintiff by virtue of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2. Jurisdiction of this Court is invoked pursuant to the provisions of the ADA, and 28 U.S.C. § 1343.

3. Venue is proper by virtue of 28 U.S.C. 1391 (b), in that Defendant employed Plaintiff in the Northern District of Illinois and all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

4. Plaintiff met all administrative prerequisites to the maintenance of this suit in that he timely filed his charges of unlawful disability discrimination with the Equal Employment Opportunity Commission, No. 21B201300800 and No. 21B201301003. Plaintiff has obtained Right-To-Sue Letters from the United States Department of Justice on September 19, 2014 with respect to his ADA claim and brings this action within ninety days thereafter. (see attached Exhibit A)

## Parties

5. Plaintiff was an employee of Defendant from January 17, 2012, until Defendant unexpectedly and unlawfully terminated Plaintiff's employment on August 16, 2012.
6. Defendant is a public community college organized under the Illinois Public Community College Act engaged in the business of providing college-level education, with its principal place of business located in Lake County, Illinois. Defendant is an employer and a proper party defendant within the definitions of the ADA, rendering it subject to suit thereunder.

## Facts

7. On January 28, 2011, doctors diagnosed Plaintiff with Keratoconus (a disease of the cornea). Plaintiff's condition is significantly debilitating and disfiguring. It is not transitory or insubstantial.
8. On January 17, 2012, Plaintiff had an interview for a chef position at the College of Lake County with two of Defendant's agents/employees: (1) Ted Poullos, Dean of Business Services and Finance; and (2) Sui Lin Brown, the Food Services Supervisor.
9. At the interview, Plaintiff informed Poullos and Brown that he was legally blind and that he had surgery for the condition
10. Plaintiff also informed Poullos and Brown that he would need a computer program called Zoom Text Vision Software to help him read the recipes from the computer by enlarging the text.
11. Poullos and Brown told Plaintiff that they could accommodate his vision impairment and hired Plaintiff.
12. On multiple occasions, Plaintiff provided Poullos, Brown, and Defendant's Human Resources Department with information on how to obtain Zoom Text including the website and phone number for the company that sells the software.
13. Despite Defendant's reassurances that they could accommodate his vision impairment, Defendant never purchased Zoom Text.
14. During his employment, Plaintiff made multiple inquiries into whether Defendant had purchased Zoom Text but he was treated as a nuisance and vaguely told "We are looking into it" or words to that effect.

15. On or around March 16, 2012, Plaintiff gave Brown the hotline number for Zoom Text, and instructed him that he needs to be on light duty because of a recent eye surgery.
16. On or around March 20, 2012, doctors performed cornea transplant suture removal surgery on Plaintiff.
17. On or around March 20, 2012, Plaintiff gave Brown a Return to Work/School Verification written by his doctor that stated Plaintiff could return to work on March 22, 2012, with certain restrictions such as avoiding high heat.
18. On or around July 16, 2012, Plaintiff sustained an injury to his left hand and was rushed to the emergency room where doctors diagnosed him with mallet finger, a popped tendon in the finger.
19. On or around July 20, 2012, Plaintiff's doctor issued a Work Status Report permitting Plaintiff to return to work with certain restrictions which were to last through September 14, 2012. The restrictions stated that Plaintiff had to use a splint for 8 weeks and that he should not do any work with his left hand. Additionally, the restrictions stated that Plaintiff should not do any "pushing/pulling" or "lifting/carrying."
20. On or around July 20, 2012, Plaintiff informed Brown of his temporary work restrictions and gave her a copy of the Work Status Report.
21. Instead of accommodating his temporary physical disability, Defendant made him push a heavy metal heating container for a long distance on a regular basis.
22. On or around August 14, 2012, Brown ordered Plaintiff to deliver 30 gallons of coffee and water even though Brown knew that Plaintiff was injured and had temporary work restrictions.
23. Plaintiff hesitantly complied with Brown's order to move the gallons and aggravated his finger injury.
24. Plaintiff informed Brown that he aggravated his injured finger when he attempted to move the gallons.
25. Instead of helping him, Brown ordered Plaintiff to move a heavy desk into the kitchen.
26. Moving furniture does not fall under Plaintiff's employment duties as a chef.
27. Plaintiff reminded Brown of his finger injury but Brown became furious and yelled "What good are you to me? Go home" or words to that effect.

28. Plaintiff told Brown that he had been doing everything she asked him to do including tasks which were outside of his work restrictions such as lifting the canister of water and delivering it daily.
29. Plaintiff reminded Brown that he had given her another copy of the doctor's note, dated July 20, 2012, which indicated that he was to do no lifting, carrying or pulling.
30. Brown also instructed Plaintiff to leave his keys and timecard on her desk before he left work.
31. Brown also stated "I don't need you on Friday," which was August 17, 2012.
32. Plaintiff complied with her order to leave the items on her desk and went home despite only working 5 hours that day.
33. When Plaintiff returned to work on August 21, 2012, he was informed that Defendant no longer needed him for the job.
34. Later, Plaintiff was surprised to receive a letter dated September 25, 2012, in which Defendant stated that Plaintiff walked off the job.

## COUNT I
## Violation of ADA: Failure to Reasonably Accommodate Vision Impairment

35. Plaintiff repeats and realleges paragraphs 1-34 and incorporates same by reference as though fully set out herein.
36. The ADA requires covered entities to provide "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue hardship." 42 U.S.C. § 1211(b)(5)(A).
37. Plaintiff could have performed the essential functions of his employment position between January 2012 and August 2012 with a reasonable accommodation for his vision impairment.
38. The accommodation Plaintiff sought was reasonable and Defendant could have accommodated Plaintiff without undue hardship.
39. To the extent that Defendant's agents believed that Plaintiff suffered from a disability that would have necessitated an accommodation within the meaning of the ADA, it had a duty to engage in an interactive process with Plaintiff in order to arrive at a reasonable accommodation that Defendant believed would meet its objectives.

40. Defendant's actions interfered with Plaintiff's rights under the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*, including, but not limited to, failing to provide reasonable accommodations for Plaintiff's disability.
41. In violating 42 U.S.C. § 12101 *et seq.*, Defendant acted with malice and/or reckless indifference to the federally protected rights of Plaintiff under the ADA.
42. Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, loss of employment, loss of wages, loss of benefits, emotional distress, psychological pain and suffering, and other damages.

WHEREFORE, Plaintiff requests that this Court:

    A. Enter judgment finding that Defendant unlawfully failed to accommodate Plaintiff's disability;
    B. Reinstate plaintiff to his previous or a comparable position;
    C. Award Plaintiff lost wages, the value of lost benefits, and incidental expenses;
    D. Award Plaintiff compensatory and punitive damages at the maximum allowable under the ADA;
    E. Award Plaintiff reasonable attorney fees and costs; and
    F. Such other relief as this Court deems just and proper

## COUNT II
### Violation of ADA: Failure to Reasonably Accommodate Temporary Physical Disability

43. Plaintiff repeats and realleges paragraphs 1-42 and incorporates same by reference as though fully set out herein.
44. The ADA requires covered entities to provide "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue hardship." 42 U.S.C. § 1211(b)(5)(A).
45. Plaintiff could have performed the essential functions of his employment position between January 2012 and August 2012 with a reasonable accommodation for his temporary physical disability resulting from his mallet finger injury.

46. The accommodation Plaintiff sought was reasonable and Defendant could have accommodated Plaintiff without undue hardship.
47. To the extent that Defendant's agents believed that Plaintiff suffered from a "career-ending injury" or other disability that would have necessitated an accommodation within the meaning of the ADA, it had a duty to engage in an interactive process with Plaintiff in order to arrive at a reasonable accommodation that Defendant believed would meet its objectives.
48. Defendant's actions interfered with Plaintiff's rights under the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*, including, but not limited to, failing to provide reasonable accommodations for Plaintiff's disability.
49. In violating 42 U.S.C. § 12101 *et seq.*, Defendant acted with malice and/or reckless indifference to the federally protected rights of Plaintiff under the ADA.
50. Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, loss of employment, loss of wages, loss of benefits, emotional distress, psychological pain and suffering, and other damages.

WHEREFORE, Plaintiff requests that this Court:

    A.    Enter judgment finding that Defendant unlawfully failed to accommodate Plaintiff's disability;
    B.    Reinstate plaintiff to his previous or a comparable position;
    C.    Award Plaintiff lost wages, the value of lost benefits, and incidental expenses;
    D.    Award Plaintiff compensatory and punitive damages at the maximum allowable under the ADA;
    E.    Award Plaintiff reasonable attorney fees and costs; and
    F.    Such other relief as this Court deems just and proper

## COUNT III
### Violation of ADA: Unlawful Termination Based on Disability- Mallet Finger

51. Plaintiff repeats and realleges paragraphs 1-50, and incorporates the same by reference herein.

52. The ADA provides that it is unlawful to terminate a qualified individual with a disability because of his disability.
53. On or about August 14, 2012, Defendant terminated Plaintiff because of his physical disability of mallet finger.
54. The Defendant intentionally discriminated against the Plaintiff by using the fact that the Plaintiff was a qualified person with a disability as a substantial or motivating factor in the Defendant's decision to terminate Plaintiff's employment.
55. In terminating Plaintiff's employment because of his disability, and because it regarded Plaintiff as suffering from a disability, Defendant treated Plaintiff differently and less favorably than it treated similarly-situated persons not disabled within the meaning of the ADA.
56. At all relevant times, Defendant was under a duty to conduct and implement its personnel decisions in a non-discriminatory manner without regard to disability or perception of a disability.
57. Plaintiff's termination occurred under circumstances that raise a reasonable inference of unlawful discrimination and Defendant's proffered reasons for terminating Plaintiff were pretextual.
58. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring substantial damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

WHEREFORE, PLAINTIFF prays for relief in the form of an Order:

A. Awarding his an amount equal to his lost wages, incidental expenses, and value of his lost benefits;
B. Reinstating Plaintiff to his former position, or, in the alternative, awarding his future pecuniary losses caused by his termination;
C. Awarding his compensatory and punitive damages at the maximum limit allowable by the ADA;
D. Awarding his attorney's fees and all costs and expenses associated with this litigation; and
E. Such other relief as this Court deems just and appropriate.

## COUNT IV
## Violation of ADA: Unlawful Termination Based on Disability- Vision Impairment

59. Plaintiff repeats and realleges paragraphs 1-58, and incorporates the same by reference herein.
60. The ADA provides that it is unlawful to terminate a qualified individual with a disability because of his disability.
61. On or about August 14, 2012, Defendant terminated Plaintiff because of his physical disability of vision impairment.
62. The Defendant intentionally discriminated against the Plaintiff by using the fact that the Plaintiff was a qualified person with a disability as a substantial or motivating factor in the Defendant's decision to terminate Plaintiff's employment.
63. In terminating Plaintiff's employment because of his disability, and because it regarded Plaintiff as suffering from a disability, Defendant treated Plaintiff differently and less favorably than it treated similarly-situated persons not disabled within the meaning of the ADA.
64. At all relevant times, Defendant was under a duty to conduct and implement its personnel decisions in a non-discriminatory manner without regard to disability or perception of a disability.
65. Plaintiff's termination occurred under circumstances that raise a reasonable inference of unlawful discrimination and Defendant's proffered reasons for terminating Plaintiff were pretextual.
66. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring substantial damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

WHEREFORE, PLAINTIFF prays for relief in the form of an Order:

    A. Awarding his an amount equal to his lost wages, incidental expenses, and value of his lost benefits;

    B. Reinstating Plaintiff to his former position, or, in the alternative, awarding his future pecuniary losses caused by his termination;

    C. Awarding his compensatory and punitive damages at the maximum limit allowable by the ADA;

    D. Awarding his attorney's fees and all costs and expenses associated with this litigation; and

E. Such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

By: ___s/Richard J. Gonzalez___

*Attorney for Plaintiff*

RICHARD J. GONZALEZ
Law Offices of Chicago-Kent College Of Law
565 West Adams Street, Suite 600
Chicago, Illinois 60661
Tel.: (312) 906-5079
Fax: (312) 906-5299

JAZ PARK
Law Offices of Chicago-Kent College Of Law
565 West Adams Street, Suite 600
Chicago, Illinois 60661
Tel: (872) 588-0440
Fax: (312) 906-5299



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

```
CERTIFIED MAIL                    950 Pennsylvania Avenue, N.W.
2015 0867                         Karen Ferguson, EMP, PHB, Room 4239
                                  Washington, DC 20530
```

September 19, 2014

Mr. Keith C. Wilson
c/o Jaz Park, Esquire
Law Offices of Chicago-Kent
565 W. Adams
Suite 600
Chicago, IL  60661

Re:  EEOC Charge Against College of Lake County
     No. 21B201300800

Dear Mr. Wilson:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Molly J. Moran
                              Acting Assistant Attorney General
                              Civil Rights Division

                              by  /s/ Karen L. Ferguson

                              Karen L. Ferguson
                              Supervisory Civil Rights Analyst
                              Employment Litigation Section

cc: Chicago District Office, EEOC
    College of Lake County



PLAINTIFF'S EXHIBIT A